Rosa Arcilia Oyola, etc., et al., Plaintiffs and Appellees, v. Heirs of Arturo Collazo, etc., Defendants and Appellants.

No. R-63-278.     Decided February 19, 1965.

*Rafael L. Franco García* for appellants. *Carmelo Ávila Medina* and *Roberto Ávila Rivera* for appellees.

Division composed of Mr. Acting Chief Justice Pérez Pimentel, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

Mr. Justice Ramírez Bages delivered the opinion of the Court.

It is sought to impose liability on the owners of a tractor for the injuries sustained by a minor while operating the same on a farm. For the purposes of disposing of the case, we must decide whether the employee of the owners who had control of the tractor was authorized by them to invite the minor to climb on the machine and operate it, or whether the minor's action in operating the tractor "tends to further the purposes of the employer and thus redound to the latter's benefit."

Minor Eustaquio Velázquez Oyola was seriously injured on April 10, 1962, when a tractor of the so-called "Zancú," owned by appellants, overturned while he operated it on a farm of the latter in the ward of Ceiba Sur of the Municipality of Juncós. According to the findings of fact of the trial court, the minor was burning field trash on the farm in question. After he finished and while on his way home, an employee of appellants, Joaquín Rivera Arsuaga, who went past him while operating the tractor, invited him to mount it. They proceeded to a loading crane and on the way back, at Rivera's request, Velázquez took over the wheel and controls of the tractor. As he approached a bifurcation quite fast, suddenly Rivera told Velázquez to turn to a certain sugarcane plantation, and when the latter made a sudden turn the tractor overturned and the minor fell underneath, as a result of which he sustained a minute compound fracture of the right tibia and a fracture of the left femur. At the time of the accident Velázquez was not working regularly for the said heirs, yet on several occasions he had operated the tractor involved in the accident at the request of Arturo Collazo, Jr., administrator of the affairs of the heirs and who had instructed Joaquín Rivera to teach the minor how to operate the tractor. The court concluded that in permitting Velázquez to operate the tractor, Rivera did it with the implied authorization of Collazo, Jr., and that Rivera's neg-

ligence is therefore imputable to defendants. It concluded further that Velázquez was also negligent. It assessed the damages at $10,000 and ruled that his negligence contributed 50 percent to the occurrence of the accident. Accordingly, it ordered appellants to pay to the minor the sum of $5,000 and to the latter's mother, Rosa Arcilia Oyola, the sum of $2,500, plus costs.

Feeling aggrieved, appellants allege that the trial court erred in holding (1) that the operator of the tractor had implied authorization from his employer to permit him to operate the tractor in question, and (2) that appellants are liable for the damages suffered by appellee Velázquez Oyola.

■■ According to the doctrine announced in *Martínez v. Comunidad M. Fajardo*, 90 P.R.R. 451 (1964), liability in cases such as this may not be established by the application of the provisions of § 13-101 of the Vehicle and Traffic Law, 9 L.P.R.A. § 1751.[1] We must therefore determine whether defendants' employee, Joaquín Rivera, had been authorized to seat the injured minor and to teach him how to operate the tractor, or, in the absence of such authorization, whether his action in permitting Velázquez to operate the tractor "tends to further the purposes of the employer and thus redound to the latter's benefit."

---

[1] In *Cordero Santiago* v. *Lizardi Caballero*, 89 P.R.R. 148 (1963), we made a historical review of the extent of the liability established by § 1803 of the Civil Code, 1930 ed. (31 L.P.R.A. § 5142), of those who have not caused a damage directly, in the case of extracontractual fault, and concluded that according to § 13-101 of the Vehicle and Traffic Law "the mere possession, voluntarily authorized, of a motor vehicle is sufficient to impose liability upon its owner." In *McGee Quiñones* v. *Palmer, ante,* p. 450, we held that the owner of an automobile was liable for the injuries caused to plaintiff when the car overturned while it was being operated by an invitee of the son of the owner of the shop where defendant left the vehicle to be washed, lubricated, repaired, and returned to his residence. The boy used the automobile to go riding with other invitees, one of whom was the injured party. We pointed out that, since the return of the car to the owner's residence required that at some time it be operated on the public thoroughfare, such operation was an essential part of the delivery of the vehicle.

In *Martínez, supra,* in which we held defendant employer liable for the injuries sustained by a minor while riding in a "Zancú" tractor, it was held that the minor had been invited by the operator of the tractor, who was defendant's employee, to help him to couple some cars to a tractor, and the accident occurred when the employee was taking the minor on the tractor to the place where he had picked him up. In this case it was shown that the employee alone could not couple the cars and that there was no one around to help him. We rightly concluded that the employee had implied authorization to seek the help required of the injured in order to further the purposes of his employer. In *Vargas Vargas* v. *Belthor Cáceres Corporation,* 90 P.R.R. 36 (1964), we also held that the employer of the operator of a vehicle used for selling and delivering merchandise to the employer's customers was liable for the injuries sustained by a minor whom the employee was carrying in the vehicle in violation of specific instructions not to do it, and that he helped the employee by watching the merchandise in the vehicle while the latter absented himself in order to take orders from the customers and to deliver the merchandise. In *Martínez* v. *U.S. Casualty Co.,* 79 P.R.R. 561 (1956), we held a municipality liable for the death of a person who was riding in a municipal ambulance in order to get some medicine at the drugstore for his sick wife who shortly before had been driven in the ambulance to the municipal hospital. The death was produced when the ambulance crashed into a post while it was being negligently operated by a Commonwealth fireman who had been asked by the mayor to transport the sick woman. We concluded in this case that the driver's action in taking the husband to get the medicine had a reasonable and pertinent relation with the interests of the municipality, since it tended to carry out the ultimate objective of the municipality which was to provide the best public-charity service to the community. In *Rivera* v. *Maldonado,* 72 P.R.R. 448,

456 (1951), we refused to hold liable the owner of a vehicle for the injuries sustained by plaintiff while riding therein, since "It was neither alleged nor proved that the chauffeur's invitation to Juan Rivera to get in the truck was in order to perform any task for the benefit of the owner thereof." In *Lloréns* v. *Lozada*, 73 P.R.R. 260 (1952), we held that the owner of a truck which was parked on a road with no lights by the driver while he went home to sleep was liable for the death of a person when his car struck the truck thus negligently parked. We concluded that in parking the truck the driver did not deviate from the duties of his employment, but that his primary purpose was to be in a position to serve his employer the next day, and that his negligence in parking is attributable to the employer. The fact that the driver violated his instructions to park the truck at night in the loading station and never leave it on the road is no defense in these cases. See, also, *Mártir Santiago* v. *Pueblo Supermarket*, 88 P.R.R. 222 (1963).

In the light of the doctrine announced, it is necessary to examine the evidence in order to determine whether it sustains the trial court's finding that Collazo, Jr., had given instructions to Joaquín Rivera to teach minor Velázquez to operate the tractor, and that on several occasions the minor had operated the tractor at the request of Collazo, Jr. The court made no determination as to whether or not the fact that the minor actually operated the tractor redounded to the benefit of defendants as owners thereof.

On direct examination, Velázquez testified what the trial judge recited in his findings of fact referred to above regarding the manner in which the accident occurred. He did not testify, nor does any evidence appear from the record, that Collazo had given instructions to operator Rivera to teach Velázquez to operate the tractor. In our judgment, the evidence does not sustain the conclusion that Rivera had been authorized to teach Velázquez to operate the tractor. On

the contrary, the conclusion is justified that driver Rivera had no authorization to invite the minor to mount and operate the tractor, and that in permitting him to do so he was not acting within the scope of his employment. Let us see. Velázquez was burning field trash shortly before mounting the tractor of his own accord, since at that moment and during the past two weeks he did not work for appellants. He said that he had previously worked in cultivation and strewing fertilizer, and for appellants in gathering cane on the field, but not in vehicles, but that he was practicing to operate tractors; that he did not attend the classes conducted by Brewer because he was not old enough. He admitted that Collazo did not give him permission to mount the tractor at the time of the accident, but that he had before; more specifically, that a year ago Collazo told Velázquez in the presence of one Celino (who was no longer an employee of appellants) that Velázquez should be taught to operate the tractors. He also testified that if Collazo had been there, he would not have mounted the tractor; that he liked to practice and handle tractors on other farms, and that he had done it although he had not been given permission to do it. Appellants had enough operators to drive their tractors. There was evidence that on another occasion Velázquez took a tractor and operated it without the operator's permission. Collazo testified that he had discharged Velázquez from work because he had taken a tractor without permission; that he had not given authorization to teach him to operate because the Department of Labor conducts those classes and pays for teaching; that on the day of the accident Velázquez asked him for work and he answered not yet, that he would think it over, because of the punishment which he imposed upon him for taking a machine without authorization; that he did not need more operators; that he has forbidden the operators to mount other persons and if he sees them doing it "he stops the vehicle."

From the foregoing recital it appears that there was no evidence that Collazo, Jr., authorized Rivera to teach Velázquez to operate the tractor, nor that the latter operated it at Collazo's request. Rather, the evidence shows that Velázquez was anxious to learn to operate the machine, and to that effect he had mounted and operated machines of that type without the operators' permission. In view of the fact that Velázquez was not old enough to operate a tractor, that Collazo had all the tractor operators he needed, and that the Department of Labor conducted classes on the operation of such equipment for pay, it is not logical nor credible that Collazo assumed the risk of permitting or authorizing his employees to teach Velázquez to operate tractors. Velázquez' version on the manner in which the accident occurred is hardly credible, since it is not logical that Rivera, who was driving at maximum speed, should suddenly and without reason get up from his seat and place an inexperienced minor to operate the vehicle thereby risking his own life. Any one of Rivera's two versions is more credible, namely, that Velázquez took the tractor as Rivera moved away (Rivera's version according to his testimony), or that Rivera seated Velázquez by his side and that the accident occurred while he was operating it when one of the cars hauled by the tractor "ran over a chain which was tied to the car, as a result of which the 'Zancú' climbed on a wall and overturned" (this version consists of a memorandum prepared by Mr. Ávila Rivera, which was read to Rivera and signed by the latter at his house shortly after the accident, which version Rivera denied being the correct one during his testimony). It seems that appellees' version is largely the product of their imagination. It is evident, therefore, that even though operator Rivera invited Velázquez to mount and to operate the tractor, he had no authorization to do it, and that in doing so he deviated from the scope of his employment.

Hence, appellants are the only ones who could be held liable for the injuries sustained by Velázquez if his action in mounting and operating the tractor "tended to further the purposes of the employer, and thus redound to the latter's benefit." On this point, the minor testified that appellants were interested in his learning to operate the tractor, particularly Collazo, Jr., "Because I was a good boy and knew how to work." He admitted that appellants did not benefit at the moment he was operating the tractor on the day of the accident. Afterwards he said that appellants derived benefit from the fact that he operated the tractor "Because next year I was going to work for him." This statement as well as the foregoing are obviously mere conjectures and speculation, since at that moment Velázquez was not working for appellants and the latter had all the operators they needed, and it was not shown that they promised to employ him. From the foregoing it is evident that there is no justification for concluding that Velázquez' action in operating the vehicle at the time of the accident tended to further the purposes of appellants and could redound to the benefit of the latter.

For the reasons stated, the judgment rendered by the Superior Court, Humacao Part, on November 12, 1963, will be reversed and the complaint dismissed.